**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| VISION BANK, | ) |
|    **Plaintiff,** | ) |
| v. | )     CIVIL ACTION NO. 10-0372-KD-M |
| RUSSELL F. ANDERSON, | ) |
|    **Defendant.** | ) |

**ORDER**

This matter is before the Court on Plaintiff's Motion for Attorney Fees and Expenses (Doc. 21).

**I. <u>BACKGROUND</u>**

On April 28, 2011, the Court granted summary judgment in favor of Plaintiff Vision Bank ("Plaintiff") (Doc. 19) and issued judgment against Defendant Russell F. Anderson ("Defendant") (Doc. 20). On May 2, 2011, Plaintiff filed its motion for attorneys' fees and expenses (Doc. 21).

To support the amounts claimed in its motion, Plaintiff filed as exhibits the Court's aforementioned summary judgment order and judgment (Doc. 21-1), the affidavit of Plaintiff's counsel Allen E. Graham ("Graham") (Doc. 21, Ex. B), and the affidavit of Charles J. Fleming ("Fleming"), Plaintiff's expert on the reasonableness of its attorneys' fees and expenses (<u>Id.</u> at Ex. C). Attached to both affidavits are invoices itemizing the services and expenses submitted by Phelps Dunbar, LLP[1] and billed to Plaintiff in connection with litigating this action, which Plaintiff asserts

---

[1] Some of the exhibit invoices are on the letterhead of Lyons, Pipes, & Cook, which merged with Phelps Dunbar, LLP on July 1, 2010 (Doc. 21 at 2).

1

are true and reasonable. Plaintiff seeks to recover from Defendant $13,456.00 in attorneys' fees, $2,115.37 for expenses and costs, and $275.00 for work performed by Fleming as an expert in this matter, (Id. at 6), in addition to the judgment amount which has already been awarded in this case (Doc. 20).

## II.  DISCUSSION

Although Plaintiff does not identify them, the agreements at issue do contain provisions through which Defendant agreed to pay various costs Plaintiff may incur in collecting on these loans (albeit in tiny print, which is largely illegible on the "Note Renewal" exhibit provided (Doc. 1 at 1; Doc. 1-2 at 2) and difficult to read on the exhibits provided of the other two agreements (Doc. 1-1 at 3; Doc. 1-3 at 2)).

Specifically, the "Note," as it is identified in the Complaint, contains a provision stating that "if you [Plaintiff] hire an attorney to collect this note, I [Defendant] also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law)." (Doc. 1-1 at 3). The "Note Renewal," as it is identified in the Complaint, also seems to contain a provision for attorneys' fees, though a combination of tiny print and poor scanning have made parts of the provision as presented in the exhibits unreadable.[2] (Doc. 1-2 at 2, ¶ 12). The "HELOC Agreement," as it is identified in the Complaint, contains a provision stating "FINANCE CHARGES: You agree to repay all of your obligations under this Agreement, including all Finance Charges and other charges that

---

[2] The Court can make out the following parts of the provision: "COLLECTION COSTS AND ATTORNEY'S ____: If I am in default and you have to ___ or take other steps to collect or secure this note, I agree to pay your reasonable _____ . If the original amount _____ is greater than $300 and if you refer this ____ to an attorney who is not your _____ employee, I agree that _____ costs include a reasonable attorney's fee. If this ____ is primarily for a consumer's personal, family, or household ___, _____ attorney's fee will not _____ of the unpaid debt."

2

apply as they are disclosed in this Disclosure Statement, including our reasonable attorneys' fees if we sue you or retain an attorney to protect our rights upon your default." (Doc. 1-3 at 2, ¶ 25).

In a similar case in which Alabama law was applied in the recovery of attorneys' fees and expenses,[3] the Court noted the following provision in a promissory note:

> Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', *attorneys' and experts' fees and expenses*, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

Wachovia Bank, Nat'l Ass'n v. Johnson, Slip Copy, Civil Action No. 08-0471-KD-C, 2009 WL 1383315, at *5, 2009 U.S. Dist. LEXIS 41211, at *13 (S.D. Ala. May 15, 2009) (DuBose, J.) (emphasis added). "Based on the unambiguous terms of the note, along with the affidavit of counsel for Wachovia," the Court found that Wachovia was entitled to recover costs and reasonable attorneys' fees. Id. at WL *5, LEXIS *13-14. Like Defendant Anderson, the defendant in Wachovia Bank, Nat'l Ass'n did not make any response disputing requests for attorneys' fees and costs. Id. at WL *1, 5, LEXIS *2-3, *16.

In regard to the reasonableness of the fees and expenses submitted, the Court must consider and address the relevant factors under Alabama law. Lolley v. Citizens Bank, 494 So. 2d 19, 20-21 (Ala. 1986) (vacating judgment pertaining to attorneys' fees for collection of a promissory note where the record did not disclose what factors the court considered in reaching its decision).

> The complete list of criteria used in the estimation of the value of an attorney's services now includes the following: (1) the nature and

---

[3] In this case, the Court's jurisdiction is founded upon diversity. (Doc. 1 at 2-3). All three agreements contain provisions indicating that they are governed by the laws of the State of Alabama. (Doc. 1-1 at 3; Doc. 1-2 at 2, ¶ 13; Doc. 1-3 at 3, ¶ 36). Therefore, the Court will apply Alabama law in this matter.

> value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Of course, not all of the criteria will be applicable.

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988) (citing Peebles v. Miley, 439 So. 2d 137 (Ala. 1983)); Pharmacia Corp. v. McGowan, 915 So. 2d 549, 552-54 (Ala. 2004). These criteria are for purposes of evaluating whether an attorney fee is reasonable, but they are not an exhaustive list of specific criteria that must all be met. Beal Bank, SSB v. Schilleci, 896 So. 2d 395, 403 (Ala. 2004).

### A. Attorneys' Fees

Plaintiff seeks to recover $13,456.00 in attorneys' fees. These fees have been calculated by Plaintiff pursuant to "the invoices and WIP reports (entered but unbilled time) of LPC and/or Phelps in this matter." (Doc. 21, Ex. B at ¶ 5). All three agreements at issue, as noted supra, contain contractual provisions entitling Plaintiff to attorneys' fees. Additionally, the Note Renewal and the HELOC Agreement explicitly state that any such fees shall be "reasonable."

Based on the unambiguous terms of the agreements, along with the affidavits of counsel for Plaintiff and of Plaintiff's expert on the reasonableness of attorneys' fees, the Court finds that Plaintiff is entitled to recover reasonable attorneys' fees. See Peppertree Apartments, Ltd. v. Peppertree Apartments, 631 So. 2d 873, 878 (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the

provisions of the contract, if the language is plain and unambiguous.").

Graham, a partner at Phelps Dunbar, billed at an hourly rate of $250 in this action. (Doc. 21, Ex. B at ¶¶ 1, 4). Graham had previously been a partner at Lyons, Pipes, and Cook, P.C. for fifteen years. (Id. at ¶ 1). Ashley Swink, a senior associate with the firm, billed at an hourly rate of $225; Robert Matthews, a junior associate, billed at $175 per hour. (Id. at ¶ 4). No evidence has been presented indicating the number of years Swink and Matthews have been practicing.

Graham avers that the hourly rate charged by each Phelps Dunbar attorney involved in this action was the "usual and customary" rate charged by each attorney when performing similar work and that the total amounts billed to Plaintiff for work in this action are reasonable. (Doc. 21, Ex. B at ¶¶ 4-6). Fleming, based on his experience practicing law, his familiarity with Phelps Dunbar and Plaintiff's attorneys, and his review of the documents relating to this action and Phelps Dunbar's attorney fee invoices in this action, avers the following: that both the firm and the individual attorneys have strong reputations for providing quality legal work, that the fee rates charged by the individual attorneys are comparable to those charged by attorneys in the Mobile legal community with similar experience, that the hourly rates charged by Phelps Dunbar attorneys and paralegals are comparable to or lower than the rates charged for similar services in Mobile by attorneys of similar experience, that the number of hours billed in this action by Plaintiff's attorneys was both reasonable and necessary, and that Plaintiff's attorneys performed with a high level of skill in successfully litigating this action. (Id. at Ex. C).

"The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." Norman v. Housing Auth. of City of

Montgomery, 836 F. 2d 1292, 1303 (11th Cir. 1988) (citations omitted). Defendant has not provided the Court with any evidence to dispute the opinions in Plaintiff's affidavits, and the Court finds no reason to dispute or question those opinions.

Upon consideration of the affidavits and the relevant factors set forth in Van Schaack, supra, the Court finds that the attorneys' billed rates are reasonable under the circumstances, with the exception of those billed by Matthews. The only indication of Matthews' level of experience is his designation as a "junior associate" by Graham. In the past, this Court has awarded the rate of $150 per hour for associates' time when their expertise is indeterminate.[4] Such is the case here.

Moreover, from a review of Phelps Dunbar's invoices, the Court finds that Graham's, Swink's, and Matthews' fees total only $12,182.50. A review of the exhibit headed "Pro Forma Statement as of 042111 for File (26947-0011) 26947-0011" does not indicate any additional attorneys' fees not already billed on invoices. (Doc. 21, Ex. B (Ex. 1 to Graham Aff.)). Two other individuals, "R. DeHora" and "V. Lundy" also billed fees in this matter, each at a rate of $110 per hour. (Id.). No information has been given about these individuals or in what capacity they performed. Accordingly, the Court will award the attorneys' fees of Graham, Swink, and Matthews in this action.

Matthews billed 14.9 hours in this action, billing at a rate of $175, while this Court has awarded him a rate of $150 per hour, a difference of $25 per hour. As such, the total fees pursuant to Phelps Dunbar's invoices, $12,182.50, are due to be reduced by $372.50 (14.9 hours x $25), for a

---

4 See, e.g., Adams v. Austal, U.S.A., L.L.C., Slip Copy, Civil Action No. 08-0155-KD-N, 2010 WL 2496396, at *6, 2010 U.S. Dist. LEXIS 59811, at *22 (S.D. Ala. June 16, 2010) (finding the hourly rate of $150/hour reasonable for associates with a few years experience); Adams v. Austal, U.S.A., L.L.C., Civil Action No. 08-0155-KD-N, 2009 WL 3261955, at *2, 2009 U.S. Dist. LEXIS 94202, at *7 (S.D. Ala. Oct. 7, 2009) (awarding attorneys with "indeterminate expertise" of 150/hour); Wells Fargo Bank, N.A. v. Williamson, Slip Copy, Civil Action No. 09-00557-KD-

total attorneys' fees award of **$11,810.00**.

Accordingly, Plaintiff's request for attorneys' fees is **GRANTED** in part and **DENIED** in part. By separate document, judgment shall be entered against Defendant in the amount of **$11,810.00** for attorneys' fees.

**B.     Expenses**

Plaintiff also seeks to recover $2,115.37 for expenses and costs incurred in this matter, consisting of photocopying costs, digital imaging costs, mileage, online database research charges, process servicer charges, courier charges, filing fees, postage/certified mailing fees, title search/abstract fees, fees for publication of legal notice, and a tax fee to the Baldwin County Revenue Commissioner for redemption of property . (Doc. 21, Ex. B  (Ex. 1 to Graham Aff.)).

The Note states that, in addition to attorneys' fees, Defendant also agrees to pay "court costs." Those parts of the Note Renewal, as filed, that can be read do not make mention of litigation expenses or costs. No mention of payment of expenses or costs is made in the HELOC Agreement, either. When compared with the provision noted in Wachovia Bank, Nat'l Ass'n, supra, it is apparent that there is some ambiguity as to what expenses and costs Defendant agreed to pay pursuant to the Note and the Note Renewal, while it is clear that no agreement to pay expenses or costs was made in the HELOC agreement.

Because the only unambiguous provision concerning expenses and costs is that providing for "court costs" in the Note, the Court finds that Plaintiff is entitled to recover reasonable court costs expended in collecting on that agreement. A review of Phelps Dunbar's billing statements and itemizations reveals filing fees of $350 expended on the October 27, 2010, invoice. (Doc. 21, Ex. B

---

C, 2011 WL 382799, at *4, 2011 U.S. Dist. LEXIS 10838, at *12 (S.D. Ala. Feb. 03, 2011).

(Ex. 1 to Graham Aff.)).

Both Graham and Fleming aver that the expenses incurred by Phelps Dunbar in the litigation of this action, as reflected on the firm's billing statements, were both reasonable and necessary. (Id. at Ex. B at ¶¶ 5-6, Ex. C at ¶ 13). Defendant did not provide the Court with any evidence to dispute the opinions in Plaintiff's affidavits, and the Court finds no reason to dispute or question those opinions. Therefore, Plaintiff is awarded court costs in the amount of **$350**.

Accordingly, Plaintiff's request for expenses and costs reasonably incurred in this case is **GRANTED** in part and **DENIED** in part. By separate document, judgment shall be entered against Defendant in the amount of **$350** for expenses and costs.

### C.     Expert Fees

Finally, Plaintiff also seeks to recover $275.00 charged by Fleming for his work as an expert in this matter. None of the agreements at issue contain unambiguous terms by which Defendant agrees to pay expert fees, unlike the provision noted in Wachovia Bank, Nat'l Ass'n, supra. Moreover, an Alabama "trial court does not have the discretion to award fees for expert witnesses unless a statute authorizes the recovery of such fees." Se. Envtl. Infrastructure, L.L.C. v. Rivers, 12 So. 3d 32, 52 (Ala. 2008) (internal quotations omitted). Plaintiff has not identified any Alabama statute which would authorize its recovery of expert fees in this matter, nor has it demonstrated how this expert fee is "a component of otherwise compensable attorneys fees[.]" Id. (internal quotations omitted). Therefore, Plaintiff's request for expert fees is **DENIED**.

### III.     CONCLUSION

For the reasons set forth above, it is **ORDERED** that Plaintiff's Motion for Attorney Fees and Expenses (Doc. 21) is **GRANTED** in part and **DENIED** in part and that, in addition to those

amounts set out in this Court's Judgment of April 28, 2011 (Doc. 20), the Defendants is **also** liable to Plaintiff for **$11,810.00** in reasonable attorneys' fees and **$350.00** in expenses and costs (**$12,160.00** altogether)**.**

An **Amended Judgment** consistent with the terms of this Order shall issue contemporaneously herewith.

**DONE** and **ORDERED** this the **27th** day of **May, 2011.**

       /s/ Kristi K. DuBose
       **KRISTI K. DuBOSE**
       **UNITED STATES DISTRICT JUDGE**